I think what distinguishes this case from any other in which summary judgment would be appropriate is that Mr. Bounds was handcuffed for the vast majority of any police force which was inflicted upon him and the importance of that is twofold. First of all it eliminates any objective threat that may be attributed to him against any of the officers at the scene. And if you're going to look at this fairly and objectively, in any other context in which summary judgment has been appropriate in any other case, you have a semblance of concern for officer safety which leads to what many courts describe as split-second decisions and even if the use of force is excessive, it's nonetheless justified or cannot be said to objectively exist in this case because Mr. Bounds was handcuffed. Well he was handcuffed, just so I understand your argument, toward the end of things, so for some of the incidents at the end but not at the beginning, right? Not at the struggle at the fence? Well very clearly not at the beginning. He wasn't handcuffed when he was first approached by Deputy Parsons but as he testifies and as Deputy Parsons testifies, the handcuffing was very early on in the entire sequence and he was... Between the second and the third tasing, am I remembering this right? Between the first and the second tasing. You're saying he was in handcuffs for the second one? For the second tasing as well as the third. And very importantly, he goes through under oath... Hang on, I want to make sure I understand the facts and boy that video was hard to make out. So he's at the fence and he's not in handcuffs and he gets teased. Right. And I hope I'm not sounding callous in the way I'm talking about this. And then he's on the ground and kind of rolls a little bit, right? And then he's tased again while he's lying on the ground? That's correct. And you're saying he's in handcuffs at that point? I thought he was handcuffed after he was tased on the ground. He's handcuffed and then he's tased. And the initial tase is according to him. And what I believe is the undisputed testimony by Deputy Parsons, there's a tase before, there's a tase after. And the tase after is designed to, as Deputy Parsons testifies, to subdue him from any sort of kicking efforts or any sort of efforts which Deputy Parsons, albeit to Mr. Bounds, not particularly persuasively testifies, Mr. Bounds is about to run away. Well, let me ask you this. We agree that the Armstrong case was decided after this case as it relates to clearly established. So we would analyze this case under Myers? Yes, Your Honor. There are a couple of distinctions here, however, that I think are important. That, first of all, you have a very, what we would contend troubling issue as to intent. And that exists, according to Mr. Bounds, during the incident, there's a reason for it. And Mr. Bounds testifies it's a sort of vigilante justice motivator, where he's being told throughout this process that this is happening because he's placed himself in a situation by virtue of drinking and driving. And it's happening mercifully to him, and it could be worse had he hurt anybody. And that's important because it removes any sort of reasonable argument that the actions were done in objective good faith. I thought we weren't supposed to consider subjective reasons for the officer's actions, but only look at the objective grounds. And I believe that's true. I think that it's a very important standard to look at it objectively. But when you're looking at And what I'm assuming Judge Mott's considered in granting summary judgment against Mr. Bounds was that these officers acted reasonably, their conduct was justified under the circumstances. But once you inject the issues of vigilanteism into this sort of objective analysis, with that now entered into the equation. It might go to officer credibility, too, right? If there's a fact dispute as to whether the officers actually said this, and a reasonable fact finder could find that the officers did say this, it might go to questions about officer credibility. And I think it would be fair if you looked at it at the very end, at the end of the road, so to speak, and jurors were to look at the conduct in its totality and say qualified immunity is a very legitimate and fair defense. Officers' jobs are hard. They should be in circumstances where their safety is potentially at risk. Therefore, we shall rule in favor of defendants. But that should be at the end. That should be clearly after both sides have had an opportunity to prevent their respective sides of the story. To do so preemptively at the summary judgment phase is doing exactly the opposite of what the very well established rules of a judge should do at the conclusion of a summary judgment proceeding. One of the things that we also believe is important dealing with the issue of credibility, making it more important that this be submitted to the jury, is also the evidence presented by Mr. Bounds after the force was inflicted, that we presented evidence, which I don't believe was disputed in any way whatsoever, in any way at all, that Deputy Parsons misreported this incident when dealing with medical personnel and describes it as a fall, presumably a fall motivated by Mr. Bounds' lack of coordination other than the reality of him being slammed to the ground on repeated occasions, and he describes the incident as, I utilized my taser or drive stun device once. So it's just simply not true. And it's creating a very sullied body of facts that to have a ruling that disposes of these facts on summary judgment, we would contend is inappropriate. This is simply a matter that a jury should have resolved, should not have been resolved at the conclusion of a summary judgment proceeding. Can I ask you just a very narrow question? What is Officer Taylor doing in this case? It seems like he shows up at the very end after all the force has been used. And just to answer your Honor's question with another question, what is he doing? Why is he a defendant? Yes, yes. Having seen the video, it's hard to see what he might have, what the claim is against him. What he did or what he should have done differently. Mr. Bounds' contention was that he concealed the evidence that was existing shortly after the infliction of force. So if you watch that video closely, he has some liquid that he's using to cover up any sort of evidence that it's certainly not the most direct line of liability that we believe would exist for the other three defendants. And then there's the other theory that we set forth in the summary judgment response of pleadings as well as the brief as to bystander liability that he chose not to act when he had an obligation to act and make the situation better and more safe for Mr. Bounds. I think if we were to go to the most questionable theory of liability as to the four defendants, I think your Honor's question is fair that the most tenuous grounds exist as they relate to Corporal Taylor. And unless your Honor's have any questions to me, I'll defer to my colleagues and come back up for the rebuttal phase of this argument. Thank you, sir. Mr. Karpinski? Good morning, Your Honors. Kevin Karpinski on behalf of the appellees. I'd like to start with correcting and addressing actually Judge Harris' question to Mr. Rommel. Judge Harris was correct. The handcuffing actually occurred after the second tasing. What happened is, as your Honor's I'm sure may be aware, a taser can be used in two different modes. One is the drive-stun mode where it's actually just applied to the body and then it can be used with the prongs used to actually come out of the taser itself. When Mr. Bounds turned and said that he would not succumb to being handcuffed, he was drive-stunned in the back right shoulder. He fell to the ground as Judge Harris pointed out on the video. You can see that he sort of rolls away and he has his hands underneath. He is tased again with the prongs at which time Deputy Parsons effectuates the handcuffing procedure. It was after that second handcuffing that he was actually handcuffed. With regard to Mr. Rommel's theory, as Judge Bailey has correctly pointed out, this Court and the Supreme Court has routinely, in many cases, reiterated that it is an objective standard. In other words, good faith subjective motivations will not make unconstitutional acts constitutional and conversely, bad faith actions that are within the realm of being constitutional are nevertheless constitutional. This is not anything to do with vigilante justice or anything that Mr. Rommel is referring to. This is a simple application of Graham v. Connor. The bottom line is that the teachings of Graham are that the Court is to look at the case and the facts and the circumstances confronting the officers at the time that they utilized force under the Fourth Amendment. I know our brief addressed the Fourteenth Amendment claim, but I will acknowledge that I believe this is a Fourth Amendment claim. I don't think it, given this sequence of events, converts to a Fourteenth Amendment analysis as a pretrial detainee. So what are the facts here? We have Deputy Parsons arriving at a scene. Can you do me a favor and just start at the back with the very last time the officers take bounds to the ground? Because I have to say, just looking at the video, I mean, I'm seeing bounds lying there with his hands cuffed, not moving. And then the officers pick him up and they slam him into the ground. That's what I see. So how can the officers get summary judgment on that one? I'm being a little bit unfair because I'm asking you to start with what, at least in my mind, is the hardest one, which is the last time they pick up this unmoving person and slam him into the ground while he's in handcuffs. Tell me how that doesn't go to a jury, at least. Well, I think my reading of what the video shows is that he begins to get up and he's picked up and he's put back down on the ground. That's how I see it. Okay, so maybe it needs to go to a jury because that's not what I see. And so let's assume both of us are reasonable viewers and a juror is going to be open to interpretation. Well, then the next question is, who was the individual? And there was really no evidence that was discovered through the discovery process as to who that individual actually was. I mean, there are four people there at some point in the process, and as Your Honor has pointed out, Corporal Taylor shows up at the very end. But there's no evidence that the plaintiff produced as to who used that force. Now, I think, Your Honor, I mean, the reality is when you look at the totality of this situation, you see throughout this entire process... I mean, we've been saying second by second, at every second, the use of force has to be basically justified anew. Even if it was justified two seconds ago, if it's not justified now, I mean, that's just Myers. Whatever it was, like seven uses of a Taser, the first three are okay, the next four are not. We really have to do this kind of incident by incident. We can't just say, well, overall, it seems okay. Well, when I viewed the video, and quite frankly, the quality of the video is not great, okay? And you have a plaintiff that doesn't remember anything beyond the initial Tasing, which clearly can't be the basis for his claim because Judge Pugh in the District Court found that that was the basis for his resisting arrest conviction. So then the issue becomes what force was used after that and when he's in handcuffs. Well, he remembers the second one, right? What's that? He does remember the second one, when he's on the ground, prone, and he gets tased the second time. Correct. Okay. He does remember that. That is correct, Your Honor. But thereafter, he doesn't remember anything. The testimony from the officers, then, is really the only testimony that's before the court. And that shows the testimony of all three officers was that he continued to try and get up, buck, kick at various times, that he would turn, that the officers tried to get him up, and as you can see from the video, on several occasions, tried to get him in the car, in the patrol car, and he continued to resist. So that's really the record before the court, Your Honor, which is their testimony of his active resistance throughout this entire process, the fact that they tried to get him into the car three, four, ultimately four times, that he headbutts and butts Officer Dallin in the chest, that he strikes back at Deputy Parsons. And so the record that's before the court is pretty clear that the officers are trying to deal with this person who is resisting being placed in the vehicle. If Mr. Bounds would have simply succumbed to being arrested and placed in the vehicle, no force at all would have been necessary. He just would have been put in the car. The testimony from the officers each time was that he was trying to get up, they put him down on the ground. From the quality of the video, it's unclear sometimes whether he falls to the ground, whether he's taken to the ground. So I believe, Your Honor, that the record simply was not sufficiently developed by the plaintiff to demonstrate one who used the force and why the force was used. It's important to keep in mind that Officers Dallin and Hecock weren't even opposed in this case. The only testimony that is in the record was what they testified to in the district court criminal proceedings, and their testimony in the district court criminal proceedings was that this is a gentleman who, at every turn, every time we tried to stand him up, every time we tried to do something with him, ultimately he was resistant, and that's why we had to continue to put him on the ground. Can I tell you what my concern about this case is? Because I hear what you're saying, and if the district court had said something like that, I would have a higher degree of comfort about this case. But all the district court did was say, I'm not paying any attention to the plaintiff's allegations because I'm looking at this video, and I think the video is entirely inconsistent with what the plaintiff is saying. But then I watched the video, and I didn't think it was that clear, and I didn't think it was that inconsistent with what the plaintiff was saying. And so I'm just concerned. The district court's analysis leaves me just, because I see the video differently, it doesn't give me anything to hang on to. Do you know what I'm saying? Well, I hear what you're saying, Your Honor, and I think with the district court, and I understand that this court would love to receive more detailed opinions from the district court setting out its rationale. Well, no, it's not that. It's not that there is, I'm not talking about something that is absent, really. I'm saying I disagree with what the district court said in deciding this case. I look at this video, this does not to me look like a Scott v. Harris kind of case, where there is no way to reconcile what the plaintiff is saying and what you can see on the videotape. I think the videotape is sufficiently subject to interpretation that you could reconcile it with the plaintiff's account and also maybe with the defendant's account. Well, I think it would be hard to reconcile the plaintiff, but first of all, the plaintiff has no account after the second phasing. So it was his interpretation. His allegations that Parsons went ahead and took his head, took his hair and slammed it into the ground, that didn't happen. You can see that in the video. The fact that he says that Dalleman, he got repeatedly picked him up and slammed him down, that's not on the video. And really what the district court said was when you looked at that video, that video was consistent with what the officer's testimony was in light of the plaintiff's concession that he does not remember anything, that that video was consistent with what the officers were saying. And so that's what I took away from what the district court was saying, which was we have what the officers have testified to. I've looked at this video. I've now looked at what the plaintiff is saying. The video is certainly consistent with what the officer's version is and the plaintiff has no version because the plaintiff has no recollection of the events. So that's how I read the district court opinion. At a minimum, your honor, even if the court were to have, if your honor were to have concerns about the use of force, I think this is a case that at a minimum begs for the court to affirm on the basis of qualified immunity. This court has repeatedly indicated that deference should be given to police officers who are confronted with exactly these kinds of situations. You have a gentleman, it's 4.30, almost 5 o'clock in the morning. He's clearly intoxicated. He is clearly noncompliant. The officers are trying to go ahead and get him under control, trying to go ahead and get him into the police cruiser. This is the kind of case, in my opinion, that cries out for at a minimum. I don't believe there was excessive force, but at a minimum, this would be a situation where qualified immunity would apply because that qualified immunity analysis, as your honor is well aware, is not just whether the right itself is clearly established. Obviously, the right against excessive force under the Fourth Amendment has been well established for years, but it's whether the facts and the circumstances that confronted those officers at that particular moment, whether those officers would know that they were violating clearly established constitutional law. I would respectfully submit that at a minimum, that qualified immunity would apply. As Judge Floyd has pointed out, in terms of the use of the taser, this would be the Myers analysis where this court has acknowledged that the law is continuing to evolve with the use of tasers and when it's appropriate to use tasers and how many times you can use a taser. That law has continued to evolve. I would respectfully submit that this is a case where the district court was correct. There is no testimony to dispute as to a material fact as to what the officers testified that they did and that, therefore, that there was not excessive force. And or, at a minimum, that they would be entitled to qualified immunity given the totality, the facts and the circumstances as to what occurred. I mean, this was basically a 10-minute struggle to get a guy who was highly intoxicated, highly agitated, aggressive, to say that someone in handcuffs cannot be aggressive. That is, quite frankly, not acknowledging what happens in police work. I mean, there are people that are placed in handcuffs and there have been cases that have come before this court where an officer has put someone in handcuffs and they've gone around and turned around in a waistband and pulled out a handgun. So to say that you can't kick and flail and go ahead and strike someone because you're in handcuffs, certainly they can be aggressive under those circumstances. And I think it's clear that Mr. Bounds was highly agitated and aggressive in that a minimum qualified immunity would apply. Even Parsons' own testimony, I thought, not on the first one, but on the second and third use of the taser, I thought Parsons was really arguing more that he was using the taser not out of any risk to safety, but simply in order to effectuate the arrest. He said it's a pain compliance technique and you use it to make someone hurt so much that they will stop fooling around and give you their hands so you can put them in cuffs. Isn't that the gist of it? I mean, that's clearly not okay anymore after Armstrong. I understand it might be all right for qualified immunity purposes, but we've made pretty clear you can't use tasers as a pain compliance technique because someone is not cooperating. Well, I think at pages 368 to 370 of the record extract, he articulated his concerns that he was clearly intoxicated, failing to obey a lawful order and resisting arrest, and that thereafter he pushed him against the fence. That's the first one. This is your own brief on page 11. Bounds refused to put his legs in the car requiring Parsons to deploy his taser to force Bounds to comply. You're not even arguing in your brief that this was a safety risk. You're just saying he wouldn't put his damn legs in the car so we tased him. Correct. And I think it's pretty clear that on the merits under Armstrong you can't do that anymore. And that does not go to your qualified immunity argument, but your first position is that there was no violation here and I just don't see how you square that with Armstrong. Well, then, Your Honor, if that were, you know, I believe this case has to be analyzed under Myers because Armstrong obviously came out afterwards. For qualified immunity purposes, but not on the merits. In your first proposition, you've made very clear that you think there was no excessive use of force here. And I'm saying that after Armstrong, if an officer says, I used a taser as a method of pain compliance to get someone to put his legs in a police car, you're not going to be able to square that with Armstrong. So with regard to that particular act, Your Honor, yes, certainly qualified immunity would be the stronger argument. With regard to Mr. Rommel's claim, arguments regarding bystander liability, I would just like to point out bystander liability was never pled in this case. So that was never part of the complaint that was at issue before Judge Motz. You can't amend your complaint via an opposition to a motion for summary judgment or at appeal. So because there never was a bystander liability claim that was ever pled, that is something that was not properly before the district court. Mr. Rommel, Mr. Bounds never moved for leave of court to amend to assert such a claim. And therefore, that was never an issue for really the trial court's consideration. Unless the court has any questions, I will submit. Thank you. Mr. Rommel, you have to reply. Thank you once again, Your Honors. There is another component to the district court's memorandum that I found to be troubling that I didn't address initially, but in which the district court acknowledges that plaintiff does present facts, plaintiff meaning, of course, Mr. Bounds, that would implicate defendants Parsons and Taylor in the use of excessive force against him. And what's rather unsatisfying about that is first, the district court does not identify which facts it considers to be sufficient to establish excessive force, and then the district court discards of that finding, presumably because it believes that Mr. Bounds was, to quote the district court, drunk at the time the matters and controversy occurred. And I don't know that Mr. Bounds' intoxication, or lack thereof, at least pursuant to this record, would in any way be an absolute bar to an excessive force claim. To the contrary, defendant's own expert indicated that based on his perceived intoxication, his actions would be lethargic and slow and uncoordinated, certainly at odds with Parsons' testimony that he feared for his safety based on some hypothetical aggression that did not but might have occurred. And in fact, Deputy Parsons was asked on numerous occasions before the use of the taser, was Mr. Bounds in any way aggressive? And the answer was, no, he was not. He simply didn't do what I asked. Strangely, what he asked was not even required under Maryland law. There's no obligation to participate in those field sobriety tests. In reading the opinion, it's just unclear how you get from the finding of excessive force to summary judgment entered against Mr. Bounds, and as I read it and reread it, you get to the end. You're home, you're just not happy. It just doesn't provide any indication as to where you get from excessive force to judgment against Mr. Bounds. I'd only assume that qualified immunity was something that was relied upon by the district court. It just simply doesn't give us any reasoning to get there, nor does it even identify qualified immunity in a single sentence. I don't think we can get there. I don't think it's objectively reasonable to act in this manner. I think also you'd have to include no fair review of the conduct of these defendants can exist without including the motive and intent that they had, and I'm trying to reconcile that with what I understand is an objective standard. I certainly understand qualified immunity and I know that it's objective, but when you consider, in addition to that, as a matter of fact, these defendants purposes in doing what they did to send a message, to send that message over and over and over again, the reasonableness of that conduct, viewed objectively, is a little bit different than any conventional qualified immunity analysis. And I believe that that focuses upon the major premises of our appeal and the grounds for such, unless the court has any specific questions for me. Thank you, sir. Thank you, your honors. I will come down and greet counsel and move to our last case.
judges: Henry F. Floyd, Pamela A. Harris, John Preston Bailey